## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| C.T., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-2093-JWL |
| | ) | |
| LIBERAL SCHOOL DISTRICT, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |
| | ) | |
| G.B., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-2360-JWL |
| | ) | |
| LIBERAL SCHOOL DISTRICT, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |
| J.B., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-2359-JWL |
| | ) | |
| LIBERAL SCHOOL DISTRICT, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |

## <u>ORDER</u>

This matter comes before the court upon defendants Liberal School District USD #480, Gary

Cornelson, Tom Scott, David Webb, Jim Little, and Mike Pewthers' ("defendants")[1] renewed motion

---

[1] While these cases involve other defendants, for the purposes of this motion, the court
will describe these specified defendants as "defendants."

1

to compel plaintiff G.B. to produce documents listed in his amended privilege log (Doc. 149) and Memorandum in Support (Doc. 150). Plaintiff G. B. has filed a timely response (Doc. 163) and defendants have filed a reply (Doc. 167). The issues are thus fully briefed and ripe for decision. As explained below, the court grants in part and denies in part defendants' motion.

## I.      Background

Plaintiff objected to certain discovery requests made by defendants based on attorney-client privilege and work product. On March 19, 2007, plaintiff submitted his original privilege log to defendants. On March 21, 2007, defendants filed a motion to compel plaintiff to produce documents listed in that privilege log (Doc. 88) and a Memorandum in Support (Doc. 89). The court found the privilege log procedurally inadequate, and on May 24, 2007, denied defendants' motion without prejudice and ordered plaintiff to prepare and submit an amended privilege log (Doc. 132). The court further ordered that in the event the parties were unable to resolve their dispute, defendants were to file a renewed motion to compel and plaintiff was to file a copy of the amended privilege log and provide to the court, for its *in camera* inspection, copies of all documents listed in the amended privilege log.

## II.      Parties' Contentions

Defendants filed their Renewed Motion to Compel (Doc. 149) and supporting memorandum (Doc. 150) on July 11, 2007. Defendants argue that documents authored by Brent Goodwin, plaintiff G.B.'s father, have been improperly withheld under a claim of privilege.[2] They contend that because Mr. Goodwin is not a client, and because he could not have been validly acting as an agent on behalf of G.B., the attorney-client privilege should not attach to his communications with

_____

[2]Memorandum in Support of Renewed Motion to Compel (Doc. 150) at 6.

2

plaintiff's attorneys.[3]  Defendants ask the court to either compel disclosure of all communications involving Mr. or Mrs. Goodwin or, alternatively, to examine the documents *in camera* to determine if a privilege has been properly asserted for those documents.[4]

Plaintiff offers three bases for Mr. Goodwin's claims of attorney-client privilege.[5] First, plaintiff contends that some documents identified in the privilege logs contain communications by Mr. Goodwin seeking privileged legal advice on his own behalf.[6] Second, plaintiff contends that the privilege logs identify privileged communications by Mr. Goodwin to counsel in his role as a witness regarding his son's claims.[7]  Finally, plaintiff contends that Mr. Goodwin operated as agent and a necessary intermediary during G.B.'s "incapacity as a minor," essentially extending the attorney-client privilege to shield Mr. Goodwin's communications with G.B.'s attorneys.[8]

## III.   Attorney-Client Privilege Standard

The party claiming attorney-client privilege has the burden of establishing that privilege and must make a "clear showing" it applies.[9]  Specifically, the party asserting the privilege must provide reasons for each element of the privilege claim and provide a *detailed description* of the documents

---

[3]*Id.* at 6–10.

[4]*Id.* at 13–14.

[5]Opposition to Defendant's Renewed Motion to Compel (Doc. 163) at 6–14.

[6]*Id.* at 10.

[7]*Id.* at 11.

[8]*Id.* at 8.

[9]*Ali v. Douglas Cable Commc'ns, Ltd. P'ship*, 890 F. Supp. 993, 994 (D. Kan. 1995).

sought to be protected.[10]   To that end, the doctrine of attorney-client privilege is narrowly construed.[11]

Here, plaintiff G.B. has alleged both federal and pendant state claims.[12]   "[W]ith both federal claims and pendant state law claims implicated, [the court] should consider both" state law and federal law regarding attorney-client privilege.[13]   If a conflict between the bodies of law exist on the issue of privilege, "then an analytical solution must be worked out to accommodate the conflicting policies embodied in the state and federal privilege law."[14]   However, if both bodies of law "support application of the attorney-client privilege" then such an analytical solution need not be articulated.[15] Because "no real conflict between federal and Kansas law regarding the attorney-client privilege [exists] . . . whether the Court applies federal or Kansas law generally makes no difference in determining whether attorney-client privilege applies."[16]

Under the federal common law, the essential elements of attorney-client privilege are as follows:

> (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such (3) the communications relating to that purpose (4) made in confidence (5) by the client (6) are at his instance permanently protected (7) from disclosures by himself

---

[10]*Nat'l Union Fire Ins. Co. v. Midland Bancor, Inc.*, 159 F.R.D. 562, 567 (D. Kan. 1994).

[11]*Id.*

[12] *See* First Amended Complaint (Doc. 14) to 06-2360-JWL.

[13]*Sprague v. Thorn Ams., Inc.*, 129 F.3d 1355, 1369 (10th Cir. 1997).

[14]*Id.*

[15]*Id.*

[16]*Kan. Wastewater, Inc. v. Alliant Techsystems, Inc.*, 217 F.R.D. 525, 526 at n.3 (D. Kan. 2003) (citing *Hiskett v. Wal-Mart Stores, Inc.*, 180 F.R.D. 403, 405 (D. Kan. 1998)).

4

or by the legal advisor (8) except if the protection is waived.[17]

Generally, attorney-client privilege "protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor."[18]  "The privilege also protects advice given by the lawyer in the course of representing the client."[19]   However, just because a person is an attorney does not render everything she does with or for a client privileged.[20]  Indeed, "'[n]ot every communication between an attorney and client is privileged, only confidential communications which involve the requesting or giving of legal advice.'"[21] For attorney-client privilege to shield the communication from disclosure, a connection must exist between "the subject of the communication and the rendering of legal advice"[22]–such that legal advice predominates the communication–[23]  and the communication between a client and an attorney must be made under "circumstances from which it may reasonably be assumed that the communication will remain in confidence."[24]  While the privilege protects disclosure of substantive communications between client and attorney, "it does not protect disclosure of the underlying facts

---

[17]*In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. 669, 674 (D. Kan. 2005) (citations omitted); *Heartland Surgical Specialty Hosp. v. Midwest Division Inc.*, 05-2164-MLB, 2007 U.S. Dist. LEXIS 54370, at * 16  (D. Kan. July 25, 2007) ("The privilege applies to communication from the client to the attorney and from the attorney to the client.").

[18]*Id.* (citation omitted).

[19]*Id.*

[20]*In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. at 674.

[21]*Id.* (citing *Burton v. R.J. Reynolds Tobacco Co.*, 175 F.R.D. 321, 327 (D. Kan. 1997)).

[22]*Id.* at 675.

[23]*Burton*, 175 F.R.D. at 328.

[24]*In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006).

by those who communicated with the attorney."[25]  As the Supreme Court explain in *Upjohn Co. v. United States*:

> The [attorney client] privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those  who communicated with the attorney:
>
>> '[T]he protection of the privilege extends only to *communications* and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, 'What did you say or write to your attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.[26]

## IV.    Discussion

### A.    Mr. Goodwin as a client and a witness

Upon review of each item listed in plaintiff's amended privilege logs, the court finds that documents 178, 179, and 180 represent communications by Mr. Goodwin seeking privileged legal advice on his own behalf. These communications meet the elements of attorney-client privilege and therefore the court will not order their production.

However, the court finds none of the documents  represent communications by Mr. Goodwin seeking privileged legal advice related to his role as a witness in his son's case.  Additionally, plaintiff G.B. has failed to articulate how a "witness" is afforded any attorney-*client* privilege in this instance and the court will not speculate on the matter.

---

[25]*In re Grand Jury Subpoena*, No. 07-212-KHV, 2007 U.S. Dist. LEXIS 86617, at *12 (D. Kan. Nov. 19, 2007) (citing *IMC Chems., Inc. v. Niro Inc.*, No. 98-2348, 2000 U.S. Dist. LEXIS 22850 (D. Kan. July 19, 2000)).

[26]449 U.S. 383, 395-96 (1981)(citation omitted).

**B.      G.B. as an "incapacitated person" for the purposes of K.S.A. § 60-426.**

The Kansas statute controlling the attorney-client privilege, K.S.A. § 60-426, provides in pertinent part, that "[t]he privilege may be claimed by the client in person or by his or her lawyer, or if an incapacitated person, by either his or her guardian or conservator . . . ."[27]  Plaintiff argues that he was legally incapacitated by his age as a minor, and as such, his attorney-client privilege may also be claimed by his guardian, Mr. Goodwin.[28]    Generally 'legally incapacitated person' specifically excludes minors[29] and to that end the Kansas legislature distinguished between minors and incapacitated persons by identifying them separately in K.S.A. § 60-217(c), the statute governing their respective capacities to sue.[30]   Yet, courts have noted that K.S.A. § 60-217(c) "places minors and disabled individuals 'on the same ground.'"[31]  However, because "incapacitated person" as a term of art appears to specifically exclude minors, based on a strict reading of the of K.S.A. § 60-217(c), the court infers that the Kansas legislature specifically omitted "minors" from the language of K.S.A. § 60-426 and did not intend the phrase "incapacitated person" to be inclusive of a minor for purposes of the attorney-client privilege.

---

[27]K.S.A. § 60-426(a) (2006).

[28]Plaintiff's Opposition to Defendants' Renewed Motion to Compel (Doc. 163) at 7–8.

[29]BLACK'S LAW DICTIONARY (8th ed. 2004), *legally incapacitated person* ("A person, *other than a minor*, who is temporarily or permanently impaired by mental illness, mental deficiency, physical illness or disability, or alcohol or drug use to the extent the person lacks sufficient understanding to make or communicate responsible personal decisions or to enter into contracts.") (emphasis added).

[30]*See* K.S.A. § 60-217(c) (2006).

[31]*See Copeland by and Through Copeland v. Toyota Motor Sale*, No. 90-1411-PFK, 1994 U.S. Dist. LEXIS 9094, at *6 (July 1, 1994) (citing 1 Spencer A. Gard, Kan. Code. Civ. Proc. 2d Annot. § 60-217(c) comments (1979)).

C.      Mr. Goodwin as an "authorized agent" for plaintiff G.B.

Plaintiff argues that Mr. Goodwin acted as an agent on his son's behalf and is therefore entitled to attorney-client privilege.  Plaintiff admits that "Kansas courts have been silent on the issue" but contends "other courts have consistently held that a parent may act as an agent or as a necessary intermediary and therefore communications made by that parent are covered by attorney-client privilege."[32]

It is true that some courts have held that "[u]nder certain circumstances the attorney-client privilege can extend to shield communications to others when the purpose of the communication is to assist the attorney in rendering advice to the client."[33]  A few courts have even noted that "[i]t is *possible* that parents will be able to assert the [attorney-client] privilege on the theory that they are acting as agents for their [child]."[34]  Additionally, the *Restatement (Third) of the Law Governing Lawyers* § 70(e) provides that "[i]f the third person is an agent for the purpose of the privilege, communications through or in the presence of that person are privileged [.]" As an illustrative example, the Restatement provides: "Client, 16 years old, is represented by Lawyer.  Client's parents accompany Client at a meeting with Lawyer concerning a property interest [or a civil matter] of

---

[32]Response (Doc. 114) at 4.

[33]*See Mazur v. Wal-mart Stores, Inc*., 2006 U.S. Dist. LEXIS 20985, at *8  (D. Mich. April 19, 2006) ("Because [plaintiff's wife] is not a party to this litigation, plaintiff cannot raise the issue of attorney-client privilege unless she acted as plaintiff's agent in communicating the information to his attorneys.); 98 C.J.S. Witnesses § 317 (2007) ("Communications between a client and his or her attorney by any form of agency employed or set in motion by the client is within the attorney-client privilege.").

[34]*Falco v. Copeland*, 868 So. 2d 659, 660 (Fla. Dist. Ct. App. 2004) (citing *Gerheiser v. Stephens*, 712 So. 2d 1252, 1255 (Fla. Dist. Ct. App. 1998))(emphasis added).

8

Client. Client's parents are appropriate agents for communication."[35]

However, plaintiff has failed to cite, and the court has failed to find, any authority in the Tenth Circuit, District of Kansas, or the State of Kansas which has held that a parent can act as an agent for their child so as to support attorney-client privilege between the parent and the attorney.

Plaintiff relies on the statutory definition given to the word "client" to argue that Mr. Goodwin acted as his authorized representative. K.S.A.§ 60-426(c)(1) defines "client" as "a person or corporation or other association that, directly or through an *authorized representative*, consults a lawyer . . . for the purpose of retaining the lawyer or securing legal service or advice."[36] Generally "it is clear that the overwhelming majority of the common law in this area contemplates a corporate context."[37] In articulating this rule, the Tenth Circuit has recognized that "[A] corporation, as an inanimate entity, must act through agents. . . . An individual, in contrast, can act for himself."[38]

However, in *Leone v. Fischer*, a recent case from the District of Connecticut, the court discussed the narrow instances wherein courts have allowed parents to act as representatives for their children so as to maintain attorney-client privilege with their child's attorney. The *Leone* court cited *Grubbs v. K Mart Corp.*, a Michigan state case where the court held that the communications

---

[35]*Restatement (Third) of Law Governing Lawyers* § 70 illustration 4 (2000).

[36]K.S.A. 60-426(c)(1) (2006) (emphasis added).

[37]*Leone v. Fisher*, No. 05-521, 2006 U.S. Dist. LEXIS 75571, at *12 (D. Conn. Oct. 18, 2006).

[38]*In re Foster*, 188 F.3d 1259, 1265 (10th Cir. 1999) (quoting *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 356 (1986)).  *See also Leone*, 2006 U.S. Dist. LEXIS 77571, at *12.

between the parents of a minor child and the child's attorney were privileged.[39]  The *Grubbs* court

stated "It is apparent that [the plaintiff] who was approximately nine years old at the time, was not

able to *bring suit in her own name*.  We believe that [the plaintiff's] parents were, of *necessity*,

acting as her agents in seeking legal advice."[40]

Kansas law provides a minor "may sue by the minor['s] . . . next friend" and "[t]he court

shall appoint a guardian *ad litem* for a minor . . . not otherwise represented in an action."[41]  In other

words, "[i]n Kansas, a person who is under 18, a minor, may not bring a lawsuit in his or her own

name.  Instead, if a minor has a cause of action, it *must* be pursued by a guardian, a conservator, a

guardian ad litem, or a 'next friend' who is an adult."[42]  Indeed, "[t]he guardian is the only person

with the capacity to make or communicate responsible decisions on behalf of the incompetent or to

maintain a suit on behalf of the ward."[43]

While G.B., at age fifteen, was not as young as the minor in *Grubbs*, had Mr. Goodwin

---

[39]*Leone*, 2006 U.S. Dist. LEXIS 77571, at *13 (citing *Grubbs v. K Mart Corp.*, 161 Mich. App. 584, 411 N.W. 2d 477 (Mich. Ct. App. 1987)).

[40]411 N.W. 2d 477, 480 (Mich. Ct. App. 1987)(emphasis added).  *See also Koster v. June's Trucking, Inc.*, 625 N.W.2d 82, 85 (Mich Ct. App. 2000)(characterizing the holding in *Grubbs* as "concluding that the parents were agents for the child, who could *not maintain a suit on her own behalf*.")(emphasis added).

[41]*See* K.S.A. § 60-217(c).

[42]*Bonin v. Vannaman*, 929 P.2d 754, 765 (Kan. 1996)(emphasis added).

[43]*See Copeland by and Through Copeland v. Toyota Motor Sale*, No. 90-1411-PFK, 1994 U.S. Dist. LEXIS 9094, at *6 (July 1, 1994) (quoting *In re Baby Boy Bryant*, 9 Kan. App. 2d 768, 773, 689 P.2d 1203 (1984); *Perry v. State Highway Comm'n*, 169 Kan. 382, 219 P.2d 659 (1950)).

commenced the present action as G.B.'s next friend[44] prior to G.B.'s attainment of majority age, it seems likely that Mr. Goodwin's communications would be privileged because Mr. Goodwin, out of necessity, would have acted as G.B.'s agent in seeking legal advice.  Indeed, under K.S.A. § 60-217(c), the minor "has no authority to appoint an attorney" and "[t]he next friend controls the suit."[45]

Here, the court notes that *Grubbs* and the *dicta* in *Leone* are not authority from this District, the Tenth Circuit, or the State of Kansas and thus are not binding.  However, in the absence of any authority in this circuit, district, or State, this court may look to authoritative state court decisions or *dicta* from district courts in other circuits when applying similar privilege standards when determining what law should apply in this instance.[46]

As plaintiff G.B. attested, from both a legal and practical standpoint, his father was his agent in communicating with his attorney while he, G.B., was a minor.  Specifically:

> In May 2003, with my consent, my father contacted and obtained an attorney Gregory Love, to represent my interest in the prosecution of Johnny Aubrey and the school district.  I was 15-years-old at the time.  Prior to May of 2003 my father and mother kept track of all my personal information, including medical bills, grade transcripts, and other such records. . . .  After May 2003, my father began to keep, in addition to my personal records, all records and documents and papers related to the litigation on my behalf. . . .  Because I was still a kid, my father, acting on my behalf, relayed communications between me and the attorney.  My father, acting on my behalf relayed documents to the attorney.  My father, acting on my behalf, made decisions about who would represent him and in what capacity.  In the fall of 2004, I was 17 years-old.  In the fall of 2004, my father obtained the services of a new

---

[44]Though a parent is not automatically considered the next friend, *see Copeland by and Through Copeland v. Toyota Motor Sale*, No. 90-1411-PFK, 1994 U.S. Dist. LEXIS 9094, at *6 (July 1, 1994) (describing K.S.A. 60-217 as "not limited to the guardian of a minor.").

[45]Robert J. Fowks & William F. Harvey, *Vernon's Kan. Stat. Annot.* § 60-217(c) comments, at 217.4 (1963).

[46]*See e.g.*, *Leone v. Fisher*, No. 05-521, 2006 U.S. Dist. LEXIS 75571, at *15 (D. Conn. Oct. 18, 2006)(same).

attorney, Jim Adler, to act on my behalf.  I approved of my father's retention of Mr. Adler on my behalf.  My father continued to manage the litigation for me because I was still a kid. He communicated on my behalf with the attorney.  He retained and managed all records related to the litigation. He retained and retrieved all personal records requested by the attorney.[47]

Therefore, for the limited purposes of this case only, the court finds that Mr. Goodwin validly acted on behalf of the plaintiff *while* G.B. was a minor.  Therefore, communications between Mr. Goodwin and plaintiff's attorneys occurring while G.B. was a minor are privileged to the same extent they would have been had they originated between G.B. himself and his attorneys.[48]

### D.   Documents and Communications Originated by Mr. Goodwin After Plaintiff had Reached the Age of Majority

In *Leone*, the court stated "in those instances where courts have addressed whether attorney-client privilege protects communications between an individual client's representative and the client's attorney, they appear to have required a showing that the representative's communication was either necessary or could not have been made by the client alone."[49]  To that end, the court held that

Communications between an individual client's representative and that client's lawyer will be afforded attorney-client privilege protection only if the information communicated is: (1) related to the subject matter of the underlying attorney-client relationship; (2) necessary to effectuate the representation; and (3) could not have been communicated by the client herself.[50]

In reaching this holding, the *Leone* court discussed *Hendrick v. Avis Rent a Car Sys. Inc.*, a case

---

[47]Response (Doc. 114) at (Attachment 7)(affidavit of plaintiff G.B.) and at (Attachment 8) (affidavit of Mr. Goodwin).

[48]Even defendants acknowledge that "[t]he communications occurring while G.B. was a minor are a closer call."  Memorandum in Support of Defendants' Renewed Motion to Compel (Doc. 150) at 8.

[49]*Leone*, 2006 U.S. Dist. LEXIS 77571, at *12.

[50]*Id.* at * 15.

from the Western District of New York, where the court protected the communication between the parents of a college student involved in a life threatening accident and that student's attorney.[51]  The *Hendricks* court considered the necessity of the communication stating that "[t]he record before me is clear that plaintiff's injuries and the comprehensive medial intervention necessary to treat those injuries inhibited plaintiff from independently seeking legal counsel.  It is both logical and reasonable that his parents would act as his agent in this important task."[52]

Plaintiff G.B. argues that he gave his father explicit consent to continue to act as his agent after he reached the age of eighteen, and as a result the court should find Mr. Goodwin's communications to and from counsel after plaintiff's eighteenth birthday privileged.[53]  However, the court finds that documents and communications originated by or directed to Mr. Goodwin after plaintiff reached the age of majority are not privileged because Mr. Goodwin's representation of G.B. was not necessary and G.B. could have communicated with his attorneys himself.  Additionally, no special circumstances existed, such as in *Hendricks*, wherein it was a *necessity* for Mr. Goodwin to continue to act as an agent for plaintiff.  Just because it might have been easier for Mr. Goodwin to continue to act as his son's agent after his son turned eighteen does not render such representation necessary.

While this might seem like an artificial distinction, after all plaintiff G.B. still resided with his parents prior to attending college, the line of demarcation exists here, and exists for a reason.

---

[51]*Id.* at *12-13.

[52]994 F. Supp. 187 (W.D. N.Y. 1996).

[53]Response (Doc. 114) at (Attachment 7)(affidavit of plaintiff G.B.) and at (Attachment 8) (affidavit of Mr. Goodwin).

The court can only speculate as to how many parents might wish to assist their non-minor children with legal matters because such an option would prove practical. However, the attorney-client privilege must be strictly construed and barring exceptional circumstances, which have not been argued or exist here, courts have found that parents cannot act on behalf of their non-minor children for the purposes of preserving the attorney-client privilege.[54]

However, the court does not believe that the termination of the agency relationship described above would automatically destroy any otherwise validly privileged document or communication originated prior to plaintiff's attainment of majority age. So, for example, documents that were privileged by Mr. Goodwin's original agency are not now destroyed because Mr. Goodwin forwarded those documents to plaintiff's current attorneys.

Therefore, because Mr. Goodwin could no longer claim to be an agent for his son after November, 10, 2005[55], G.B.'s 18th birthday, there is no valid basis for claiming privilege over any communications originating or occurring between Mr. Goodwin and plaintiff's attorneys on or after that date. As such, the following documents as listed on plaintiff's amended privilege logs are not

---

[54]*See In re Grand Jury Subpoenas*, 995 F. Supp. 332, 340 (S.D.N.Y. 1998)("Only in extraordinary cases as, for example, where a client needs an interpreter, or where he is so seriously injured that he cannot deal directly with counsel, has the attorney-client privilege been extended to designated representatives of an individual client."); *Gerheiser v. Stephens*, 712 So. 2d 1252, 1254 (Fla. App. 1998)(finding that a mother's communication with the attorney for her son privileged because her *incarcerated* son had requested her assistance in obtaining legal counsel); *Restatement (Third) of Law Governing Lawyers* § 70(f) (2000) ("A person is a confidential agent for communication if the person's participation is reasonably *necessary* to facilitate the client's communication with a lawyer[.]")(emphasis added); 81 Am. Jur. 2d Witnesses § 367 (2007) ("[T]he attorney-client privilege is destroyed when such communications are made in the presence of a *nonnecessary* agent of the attorney or client.")(emphasis added)

[55]Plaintiff G.B. was born November 10, 1987. *See* Case No. 06-2360-JWL, Complaint (Doc. 1) at 3.

protected under attorney-client privilege: nos. 1–20, 134, 152–155, 158, 161, 177, and 183.[56]  Of these documents the privilege logs do not list work product as a basis for non-disclosure for nos. 1-4, 6, 7, 11, 13-15, 19-20, 153-155, 158 and 161 and as a result they shall be produced.

### E.    Communications with Third Parties

The court has, at defendants' request,[57] carefully reviewed *in camera* the 183 documents listed in the amended privilege logs to determine whether attorney-client privilege has been properly asserted in each instance.  Even assuming that Mr. Goodwin acted as a agent for his minor child, Mr. Goodwin's communications with third parties, namely the office of the Attorney General of Kansas, Grant Shellenberger, Seward County Special Prosecutor, and Victor Bouldin, resident of Borger, Texas, are not protected by the attorney-client privilege.  As a result, document nos. 53, 163–170, 174,[58] 175, and 181, as listed on plaintiff's amended privilege logs, are therefore not privileged based on attorney-client privilege.[59]  Of these documents, the privilege logs do not list work product

---

[56]The court notes that document no. 183 is an "undated memo."  However, the privilege log lists Mr. Goodwin as the document's author and Ms. Randles, one of plaintiff's current attorneys, as its recipient.  Considering plaintiff's present attorneys were not retained until after plaintiff turned 18, the court finds Mr. Goodwin created this document after G.B. was no longer a minor.

[57]*See* Memorandum in Support of Defendants' Renewed Motion to Compel (Doc. 150) at 14; Reply in Support of Renewed Motion to Compel (Doc. 167) at 6.

[58]Because plaintiff failed to specify which portion of document 174 was the "[n]on-privileged email in string [that] was produced" the court notes that the first portion of document 174, the email from Mr. Goodwin to Mr. Love, is protected by attorney-client privilege and to the extent the court orders production of document 174 the communication between Mr. Goodwin and Mr. Love shall be redacted.

[59]It appears from Defendants' Memorandum in Support of Renewed Motion to Compel (Doc. 150, n.2) that document nos. 163–170 have been produced already but with some "unexplained redactions."  These items shall be re-produced in full without redactions.

15

as a basis for non-disclosure as to nos. 175 and 181 and therefore these documents shall be produced.

## V.    Work Product

Plaintiff's privilege logs list work product immunity as a basis for non-disclosure as to document nos. 5, 8-10, 12, 16-18, 134, 152, 177, and 183 (documents Mr. Goodwin created after November 10, 2005) and nos. 53, 163-170, and 174 (communications between Mr. Goodwin and third parties).  As a result, the court will discuss the applicability of work product immunity as to these documents.

### A.    Standard

As the United States Supreme Court explained in *Hickman v. Taylor*, the work product doctrine exists so that attorneys can prepare for litigation with a "certain degree of privacy," and without undue interference or fear of exploitation or unnecessary intrusion of one's work by an adversary.[60]  The party seeking work product protection must establish that "(1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party."[61]

The party asserting work product immunity bares the burden of establishing the applicability of the privilege, and must do so by making a "clear showing" that the work product immunity

---

[60]329 U.S. 495, 510-11 (1947).

[61]*Johnson v. Gmeinder*, 191 F.R.D. 638, 643 (D. Kan. 2000)(citations omitted).  Fed. Rule Civ. P. 26(b)(3) expressly protects from discovery documents, things and mental impressions of a party or his representative, particularly his attorney, created for or in anticipation of litigation or trial.

applies.[62] To that end, the party claiming work product immunity must establish *all* elements of the immunity and can only meet this burden "through an evidentiary showing based on competent evidence."[63] This burden cannot be "discharged by mere conclusory or ipse dixit assertions"[64] and a "blanket claim" that the work product doctrine applies is insufficient.[65]

In *Marten v. Yellow Freight System, Inc.*, Judge Rushfelt extensively analyzed the issue of whether a party had prepared documents in anticipation of litigation.[66]  The court stated:

> The work product standard has two components. The first is what may be called the "causation" requirement. This is the basic requirement of the Rule that the document in question be produced because of the anticipation of litigation, i.e., to prepare for litigation or for trial. The second component is what may be termed a "reasonableness" limit on a party's anticipation of litigation. Because litigation can, in a sense, be foreseen from the time of occurrence of almost any incident, courts have interpreted the Rule to require a higher level of anticipation in order to give a reasonable scope to the immunity.
>
> The court looks to the primary motivating purpose behind the creation of the document to determine whether it constitutes work product. Materials assembled in the ordinary course of business or for other non-litigation purposes are not protected by the work product doctrine. The inchoate possibility, or even the likely chance of litigation, does not give rise to work product. To justify work product protection, the threat of litigation must be "real and imminent." To determine the applicability of the work product doctrine, the court generally needs more than mere assertions by the party resisting discovery that documents or other tangible items were created in anticipation of litigation.[67]

---

[62]*McCoo v. Denny's Inc.*, 192 F.R.D. 675, 683 (D. Kan. 2000).

[63]*United States Fire Ins. Co., v. Bunge N. Am.*, No. 05-2192-JWL, 2007 U.S. Dist. LEXIS 94551, at * 17 (D. Kan. Dec. 20, 2007)(citing *McCoo*, 192 F.R.D. at 683).

[64]*Id.* (citing *McCoo*, 192 F.R.D. at 683).

[65]*Id.* (citing *McCoo*, 192 F.R.D. at 680).

[66]*See id.* (citing No. 96-2013-GTV, 1998 U.S. Dist. LEXIS 268, at *27-28 (D. Kan. Jan. 6, 1998)).

[67]*Id.* (citations omitted).

### B.    Discussion

Here, the court finds that plaintiff has failed to carry his burden as to the applicability of work product immunity as to the remaining documents.  Plaintiff merely lists "W/P" as the basis for non-disclosure, along with attorney-client privilege, on his privilege logs for these remaining documents, but fails to explain in his briefing why or how work product immunity should apply. Indeed, in plaintiff's response to the instant motion, he mentions the work product doctrine several times, but does so merely in passing and only along side attorney-client privilege.[68]  In fact, plaintiff only *discusses* the work product doctrine when informing the court about certain documents plaintiff has produced[69] and to argue that document nos. 163-170 "were produced during [Mr. Goodwin's] deposition after discussion with defendants' attorney and were not intended to waive or disregard work product privilege asserted with respect to the documents."[70]

As a result, the court finds that plaintiff has failed to demonstrate the applicability of the work product doctrine through an evidentiary showing based on competent evidence and has refrained from articulating any reasoning *at all* as to why the court should prevent disclosure of these documents on this basis.

The court does note that upon its own review, these documents do not appear to meet the elements of work product immunity.  Specifically, document nos. 5, 8-10, 12, 16-18, 134, 152, 177, and 183 were created by Mr. Goodwin after his son was over eighteen, and in light of the court's analysis as to agency and attorney-client privilege, likely were not created by a party or a

---

[68]Opposition to Defendant's Renewed Motion to Compel (Doc. 163) at 1,  2, 3, 4, 10, and 14 (referencing the work product doctrine in conjuncture with attorney-client privilege).

[69]*Id.* at 4.

[70]*Id.* at  5.

representative of a party.  Further the court cannot see how the remaining documents (nos. 53, 163–170, 174 and 181) which are e-mail communications between Mr. Goodwin and the *Criminal Division* of the Kansas Attorney General's Office, Mr. Goodwin and Grant Shellenberger regarding the *criminal proceedings* against Mr. Aubrey and Mr. Goodwin and Victor Bouldin regarding Mr. Aubrey's past, meet the elements of work product immunity either.

## VI.    Conclusion

The court notes that several e-mail documents the court has herein compelled the production of reference "attachments."[71]  Upon review of these documents and the privilege logs, the court cannot find where plaintiff has separately listed these attachments.  It is possible that plaintiff has already produced these attachments and therefore has no need to list them in the privilege logs. However, to the extent plaintiff has not produced these attachments the court finds any claim of privilege plaintiff might wish to raise as to those documents has been waived, and the attached documents, to the extent they are responsive to defendants' document requests, shall be produced. Plaintiff has had ample opportunity to list these attachments on either of the privilege logs, or plaintiff's original privilege log, and the court will not afford plaintiff a third bite at the apple.[72]  The court finds that each remaining item not previously discussed in this order is properly listed as privileged, and shall remain protected.

**IT IS THEREFORE ORDERED** that defendants' Renewed Motion to Compel (Doc. 149)

---

[71]*See e.g.*,  docs. 10, 11, 16, and 177.

[72] *Employers Reinsurance Corp. v. Calredon Nat'l Ins. Co.*, 213 F.R.D. 422, 428 (D. Kan. 2003)("The law is well-settled that, if a party fails to make the required showing, by not producing a privilege log or by *providing an inadequate one*, the court may deem the privilege waived.")(emphasis added).

is granted in part and denied in part.

**IT IS FURTHER ORDERED** that by January 30, 2008 plaintiff G.B. shall produce to defendants, without redaction except as discussed herein, the following documents listed in plaintiff's amended privilege logs: 1–20, 53, 134, 152–155, 158, 161, 163-170, 174, 175, 177, 181, and 183.[73]

**IT IS FURTHER ORDERED** that all remaining documents listed in plaintiff's amended privilege logs remain privileged.

**IT IS FURTHER ORDERED** that defendants shall have until February 14, 2008 to depose Mr. Goodwin related to any documents for which the court has ordered production.[74]

**IT IS SO ORDERED.**

Dated this 25th day of January, 2008, at Topeka, Kansas.

 s/ K. Gary Sebelius
K. Gary Sebelius
United States Magistrate Judge

---

[73]Plaintiff's response states that documents 3, 12, 35, 54, 58, 60, 68, 78, 82, and 102 have been produced. *See* Plaintiff's Opposition to Defendants' Renewed Motion to Compel (Doc. 163) at 5. As a result, to the extent the court has ordered production of documents already produced the court's order might prove redundant. However, considering that it is not clear whether plaintiff has provided these documents without redactions, out of an abundance of caution the court addressed production of all documents listed on the privilege logs.

[74]*See* Order (Doc.236).