IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

C.T.,

                        Plaintiff,

v.                                                    Case No.  06-2093-JWL

LIBERAL SCHOOL DISTRICT, et al.,

                        Defendants.
─────────────────────────────────

G.B.,

                        Plaintiff,

v.                                                    Case No.  06-2360-JWL

LIBERAL SCHOOL DISTRICT, et al.,

                        Defendants.
─────────────────────────────────

J.B.,

                        Plaintiff,

v.                                                    Case No.  06-2359-JWL

LIBERAL SCHOOL DISTRICT, et al.,

                        Defendants.

## <u>MEMORANDUM AND ORDER</u>

This matter comes before the court on plaintiffs' Motion to Compel (Doc. 190).  The Liberal

School District Defendants ("defendants") have filed a response (Doc. 206) to which plaintiffs have

replied (Doc. 212).  These matters are thus fully briefed and ripe for resolution.

**I.      Background**

These cases, which have been consolidated for the purposes of discovery, arise from

allegations of sexual harassment and abuse committed by defendant Johnny Lynn Aubrey of the

plaintiffs who were minor students attending public school in Liberal School District U.S.D. #480.

Plaintiffs allege violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a);

the Due Process Clause of the Fourteenth Amendment via 42 U.S.C. § 1983; and Kansas common

law.[1]

## II.      General Rules Governing Motions to Compel

When resolving motions to compel the court is guided by several principles.  First, the

moving party must indicate what discovery it seeks to compel.[2]  Therefore, the court will only

address those requests for production and interrogatories specifically mentioned in plaintiffs'

Memorandum in Support of their motion to compel.

Second, "when ruling on a motion to compel, the Court will consider only those objections

that have been (1) timely asserted, and (2) relied upon in response to the motion to compel."[3]

"Objections initially raised but not relied upon in response to the motion to compel will be deemed

abandoned."[4]  Accordingly, the court will only discuss those objections raised by defendants and

relied upon in their response to the instant motion.

Third, as a general matter, the court "looks with disfavor on conclusory or boilerplate

---

[1]*See e.g.*, C.T.'s Second Amended Complaint (Doc. 85) at p. 1.

[2]*See Williams v. Sprint/United Mgmt. Co.*, No. 03-2200-JWL, 2005 U.S. Dist. LEXIS 5170, at *
13 (D. Kan. March 30, 2005)(finding that the moving party need not address each objection in its motion
to compel, but requiring "[i]n most cases, the moving party need only file its motion to compel and draw
the court's attention to the relief the party seeks.").

[3]*Cardenas v. Dorel Juvenile Group, Inc.*, 232 F.R.D. 377, 380 n. 15 (D. Kan. 2005)(citing
*Sonnino v. Univ. of Kansas Hosp. Auth.*, 220 F.R.D. 633, 641 (D. Kan. 2004); *Contracom Commodity
Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 662 (D. Kan. 1999)).

[4] *Id.*

objections."[5] Specifically,

> [w]hen a party files a motion to compel and asks the Court to overrule certain objections, the objecting party must specifically show in its response to the motion to compel, despite the broad and liberal construction afforded by the federal discovery rules, how each request for production or interrogatory is objectionable. By failing to address these types of objections in response to a motion to compel, a party fails to meet its burden to support its objections."[6]

And as a result of this failure, "[t]he Court is then left without any basis to determine whether the objections are valid and applicable in light of the particular circumstances of the case."[7] Thus, while the court will examine defendants' various objections, the court will not consider defendants' boilerplate objections to the extent that defendants have failed to support them.[8]

## III. Adequacy of the Privilege Log

Defendants' response to the instant motion contends that plaintiffs' counsel had agreed that the instant motion did not seek production of documents created after plaintiff G.B. filed a claim. Since defendants assert that they have no documents for which they claim a privilege that do not meet this criteria, defendants argue that they need not specifically list these documents in their privilege log. Neither plaintiffs' memorandum in support of the instant motion, nor their reply brief indicated such an agreement.

However, during the parties' January 25, 2008 status conference with the court[9], plaintiffs' counsel confirmed that during their D. Kan. Rule 37.2 meet-and-confer conference the parties agreed

---

[5]*Sonnino v. Univ. of Kan. Hosp. Auth.,* 221 F.R.D. 661, 670 (D. Kan. 2004).

[6] *Id.*

[7]*Id.*

[8] *See Horizon Holdings Inc. v. Genmar Holdings, Inc*., 209 F.R.D. 208, 213 (D. Kan. 2002) (citing *Snowden v. Connaught Lab., Inc*., 137 F.R.D. 325, 322 (D. Kan. 1991)).

[9]Minute Entry (Doc. 235).

that the plaintiffs' instant motion to compel did not seek to compel documents or communications created at the behest of or by defense counsel after plaintiff G.B.'s filing of a claim with the Department of Education's Office of Civil Rights on December 21, 2004.  So too, during the status conference with the court, plaintiff expressly affirmed that now they were not seeking any documents created at the behest of or by counsel after December 21, 2004.  As a result, the court's task is significantly narrowed.  To the extent the court orders further supplementation or compels discovery responses, defendants need not list any such documents or communications that meet the parties' agreed-to criteria on their privilege log[10] or amended privilege log.[11]

As to the adequacy of the privilege log and amended privilege log, the court notes that the defendants' privilege logs merely seeks protection of those documents for which the parties have apparently agreed are protected and which are not sought in this litigation– namely documents in the litigation files of defendants' officers, attorneys and an investigator hired by their attorneys.[12] In light of the parties' apparent agreement on the matter, the adequacy of the privilege log is moot and need not be addressed by the court.

## IV.    Requests for Production

### A.    School files and personnel files.

Plaintiffs seek school files for twenty-four (24) former students and the personnel file of a non-defendant employee of the school district.

#### 1.    Production of student files (C.T.'s Request Nos. 6-21 and J.B.'s Request Nos. 7-14).

---

[10]Memorandum in Support (Doc. 191) at (Exhibit 10).

[11]Memorandum in Support (Doc. 191) at (Exhibit 13).

[12]Response (Doc. 206) at p. 17.

C.T.'s Request for Production Nos. 6–21, and J.B.'s Request for Production Nos. 7–14, seek "all school files maintained by defendant on" twenty-four (24) named students or former students of Liberal High School.  Defendants object to producing these files on the grounds of relevancy, privacy and because the students are not parties to the action.[13]  As to relevance, plaintiffs contend that "[t]hese requests are reasonably calculated to lead to the discovery of admissible evidence as these individuals were involved in the sexual abuse, harassment or investigation of the plaintiffs and of [defendant] Johnny Aubrey."[14]  Additionally, plaintiffs contend that the court can order production of these files in compliance with Family Educational Rights and Privacy Act ("FERPA")[15], rendering defendants' privacy objections moot.

### a.    Standard for Relevance

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any matter . . . that is relevant to the claim or defense of any party."  "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."[16]

"When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such

---

[13]Response (Doc. 206) at p. 10 (citing *Pierson v. United States*, 428 F. Supp. 384, 390 (D. Del. 1977); *Smith v. F.T.C.*, 403 F. Supp. 1000, 1004 (D. Del. 1975)).

[14]Reply (Doc. 212) at p. 11.

[15]20 U.S.C. § 1232g; 34 C.F.R. § 99.

[16]Fed. R. Civ. P. 26(b)(1).

marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure."[17] "Conversely, . . . when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request."[18] "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party."[19]  Additionally, "[t]he fact that a person is not a party in litigation is not dispositive of whether documents are relevant to the controversy at hand or likely to lead to the discovery of admissible evidence."[20]

### b.     Personnel Files

In *Van Deelen v. Shawnee Mission School District*, plaintiff sought to compel the personnel file of the principal of the school where plaintiff's First and Fourteenth Amendment rights were allegedly violated.[21]  In addressing defendants' relevancy objection, the court analogized production of the principal's personnel file to the discoverability of personnel files in similar civil rights cases arising under 42 U.S.C. §§ 1981 and 1983 and Title VII employment cases alleging retaliation and discrimination.[22]  The court noted that in the District of Kansas it has been held generally that

---

[17]*Gen. Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

[18]*Id.*

[19]*Blaser v. Mt. Carmel Reg. Med. Ctr.*, No. 06-2422-JAR, 2007 WL 1452993, at *4 (D. Kan. May 17, 2007); *Sonnino v. Univ. of Kan. Hosp. Auth.*,  No. 02-2576-KHV, 2004 WL 769325, at *2 (D. Kan. Apr. 8, 2004); *Hammond v. Lowe's Home Ctrs., Inc.*, 216 F.R.D. 666, 670 (D. Kan. 2003); *Gen. Elec. Capital Corp.*, 215 F.R.D. at 640.

[20]*Blaser*, 2007 WL 1452993 at *4.

[21]No. 03-2018-CM, 2003 U.S. Dist. LEXIS 21528 (D. Kan. Nov. 24, 2003).

[22]*Id.* at * 7.

an individual's personnel file is relevant and/or reasonably calculated to lead to the discovery of admissible evidence, and therefore discoverable, if the individual is alleged to have engaged in the retaliation or discrimination at issue or to have played an important role in the decision or incident that gives rise to the lawsuit.[23]

Indeed, courts in the District of Kansas have applied this rule in "employment discrimination and civil rights cases, but have also applied it under other circumstances."[24] To that end, the *Van Deelen* court noted that the principal was alleged to have been one of the employees of the school district who retaliated against plaintiff and who deprived plaintiff of his constitutional rights and that upon review of the record, the principal would prove "an important witness in this case."[25] As a result, the court held that the principal's file appeared facially relevant, but allowed defendants to list on a privilege log any irrelevant medical records contained in the personnel file. Similarly, in the civil rights context, the court in *McCoo v. Denny's Inc.*, found plaintiffs were entitled to discover the personnel files of restaurant employees who were allegedly involved in or witnessed any of the claimed discriminatory events.[26]

---

[23]*Id.* (citing *EEOC v. Kan. City S. Ry.*, 2000 U.S. Dist. LEXIS 21806, No. 99-2512-GTV, 2000 WL 33675756, at *3 (D. Kan. Oct. 2, 2000) (Title VII action in which court compelled production of personnel file of supervisor who made decision to terminate plaintiff's employment); *Beach v. City of Olathe, Kan.*, 2000 U.S. Dist. LEXIS 11759, No. 99-2210-GTV, 2000 WL 960808, at *2-3 (D. Kan. July 6, 2000) (§ 1983 case in which court compelled production of personnel file of police officer alleged to be the driving force behind retaliatory action); *McCoo v. Denny's, Inc.*, 192 F.R.D. 675, 677-78 (D. Kan. 2000) (§ 1981 public accommodations case in which court compelled production of personnel files of employees alleged to have witnessed or participated in the claimed discrimination); *Daneshvar v. Graphic Tech., Inc.*,1998 U.S. Dist. LEXIS 16446, No. 97-2304-JWL, 1998 WL 726091, at *5 (D. Kan. Oct. 9, 1998) (Title VII case in which court compelled production of personnel files of three "key witnesses" who "played important roles in the employment decisions affecting plaintiff")).

[24]*Moss v. Blue Cross & Blue Shield of Kan., Inc.*, 241 F.R.D. 683, 698 (D. Kan. 2007)(citations omitted).

[25]2003 U.S. Dist. LEXIS 21528, at * 8.

[26]192 F.R.D. 675, 688 (D. Kan. 2000)(citing *Daneshvar*, 1998 U.S. Dist. LEXIS 16446 (compelling production of personnel files of three "key witnesses" who "played important roles in the employment decision affecting plaintiff"); *Hoskins v. Sears, Roebuck and Co.*, 1997 U.S. Dist. LEXIS

### c.    Analysis

First, the court notes that, "merely because a person may be called as a witness at trial does not justify disclosure of his/her personnel file."[27] Here, it is not clear that either side intends to use any of these students as witnesses.  Indeed, the court has reviewed the record and found no mention of these students.[28] As a result the court finds these requests appear facially irrelevant.

Plaintiffs' complaints allege they were "ostracized and harassed by students"[29], and in their reply brief allege that the students whose files they seek to compel were "involved in the sexual abuse, harassment or investigation of the plaintiffs and of [defendant] Johnny Aubrey."[30]  However, plaintiffs have not indicated which students participated in the alleged harassment, and thus might be "key witnesses" and/or participants in the events that gave rise to the litigation, and which students were merely  "involved" in an "investigation" of plaintiffs or defendant Aubrey.  Unlike *Van Deelen*, the court's review of the record does not indicate that each of these twenty-four students will prove "important witnesses" in these cases.

Plaintiffs agree with defendants "that the grades in World history of one of these individuals is not relevant" but contends that "if the same file held a record of sexual assault or a record of

---

13682 (D. Kan. Sept. 2, 1997)(compelling production of personnel files of "eight individuals who are alleged to have been involved in, witnessed, or failed to report" the claimed harassment)(further citations omitted)).

[27] *Moss*, 241 F.R.D. at 698 (citing *Williams v. Board of County Comm'rs*, No. 98-2485, 2002 U.S. Dist. LEXIS 8986 at *13 (D. Kan. June 21, 2000)).

[28]The court notes the possible correlation between a student, Ryan Madden (J.B. Request No. 8) and plaintiffs' deposing of  Rick Madden (Notice of Deposition) (Doc. 189).

[29]*See* Second Amended Complaint (Doc. 85) at p. 9; Case No. 06-2360-JWL First Amended Complaint (Doc. 14) at p. 9; Case No. 06-2359-JWL First Amended Complaint (Doc. 8) at p. 9.

[30]Reply (Doc. 212) at p. 11.  This statement refers specifically to C.T.'s requests 6–21.  It is presumed that plaintiff intends this same reply to apply to defendant's objections to J.B.'s requests 7–14.

discipline regarding harassment of one of the plaintiffs, such information would certainly be relevant."[31]  The court finds that a record of sexual assault and or discipline regarding harassment of one of the plaintiffs likely would be responsive to several of plaintiffs' *other* discovery requests.[32]

In all other respects the court finds plaintiffs' arguments regarding disclosure of these student records unpersuasive.  As a result, the court sustains defendants' objection as to relevance and will not compel production of these files other than any records of assault and/or discipline regarding harassment of one or more of the plaintiffs.

### d.    FERPA objection

The court will address defendants' objection that disclosure of these files is protected by FERPA[33] and/or other applicable privacy laws and overrule that objection for the remainder of the discovery disputes at issue here.  Courts in the District of Kansas have previously overruled a similar objection to a discovery request, holding that "an educational institution 'may disclose personally identifiable information from an education record of a student without the consent required by § 99.30 if the disclosure . . . is to comply with a judicial order or lawfully issued subpoena.'"[34]  Specifically, discovery of otherwise confidential information may be disclosed as long as (1) the parental notification requirements[35] of the regulation are met and, (2) a protective order restricts

---

[31] *Id.*

[32]*See e.g.*, J.B. Request No. 6.  G.B. Request for Production Nos. 6, 7, 24, 34.

[33]Family Educational Rights and Privacy Act (20 U.S.C. § 1232g; 34 C.F.R. § 99).

[34]*D.L. v. Unified Sch. Dist. No. 497*, 270 F. Supp. 2d 1217, 1243–44 (D. Kan. 2002) (*vacated on other grounds by D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223 (10th Cir. 2004)) (*quoting* 34 C.F.R. § 99.31(a)(9)(I)).  *Accord In re Ray*, 283 B.R. 70, 75–76 (N.D. Okla. 2002).

[35]"The educational agency or institution may disclose information under paragraph (a)(9)(I) of this section only if the agency or institution makes a reasonable effort to notify the parent or eligible student of the order or subpoena in advance of compliance, so that the parent or eligible student may seek

disclosure of the information to the purposes of the litigation.[36]

Here, the court finds that educational records may be disclosed without running afoul of FERPA so long as the school district notifies the parent or student of the disclosure and a protective order restricts the use of such information to this litigation only.[37]  As a result, the court expressly finds that should any documents responsive to plaintiffs' requests for production, for which the court herein orders production, exist in these files, or in the files of other students, defendants shall produce these documents after following the FERPA guidelines.

### 2.    G.B.'s Request No. 20.

G.B.'s Request for Production No. 20 seeks "all files maintained by" the school district pertaining to Troy McCarter, a coach for the School District.  Defendants object that such files are not relevant to this action because Mr. McCarter is not a defendant.  Plaintiff states that Mr. McCarter is "in individual involved with the School District, Johnny Aubrey, the sexual abuse of plaintiffs and other boys, and the retaliation they experienced."[38]  However, unlike the twenty-four students, plaintiffs have deposed Mr. McCarter.[39]  Indeed, the role of coaches in the events which gave rise to this litigation appears to be an important issue.[40]  Accordingly, the court finds plaintiffs

---

protective action . . . ."  34 C.F.R. § 99.31(a)(9)(ii).

[36]*D.L.*, 270 F. Supp. 2d at 1244.

[37]*See* Protective Order (Doc. 43).

[38]Reply (Doc. 212) at p. 13.

[39]*See* Notice of Deposition (Doc. 172).

[40]Defendants Cornelson, Scott, and Pewthers were all coaches at Liberal High School during the events that gave rise to these causes of action.  *See also* C.T.'s Second Amended Complaint (Doc. 85) at p. 3 ("Defendant Aubrey acted as a volunteer coach for the Defendant School District, with the explicit approval of Defendant School District's agents Webb, Cornelson, Scott, Pewthers and Little as well as *other coaches* and teachers [.]")(emphasis added).

have met their burden to demonstrate the relevancy of the production of files pertaining to Mr. McCarter.  Specifically, as in *Van Deelen*, McCarter appears to have played a key role in the incidents which gave rise to this lawsuit, and as a result his personnel file is discoverable.

**C.    Reference to documents produced and Rule 26 disclosures (C.T.'s Request Nos. 2, 22-24, 26, 29-31 and 35 and G.B.'s Request Nos.  2, 8, 10-13, 27, 28, 32, 30, 37, 41-46 and J.B.'s Request Nos.  17-18, 20, 22-23, 25, and 28)**.

As to each of these requests for production, defendants' response to the request for production list various objections, but states "[w]ithout waiving said objections, defendant refers plaintiff to the documents attached hereto, interrogatory responses and documents produced pursuant to Rule 26."  The court finds this response improper.[41]  Federal Rule of Civil Procedure 34(b) provides that a response to a request for production "shall state, with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is objected to[.]"  Here, this response is neither an objection, nor an adequate identification of the responsive documents.  Furthermore, a party has a duty to respond to a discovery request to the extent it is not objectionable.[42]  Additionally, as to each of these document requests, defendants have not raised any objection in their response to the motion to compel, and as a result any objection has been waived.  As a result defendants shall identify by Bates Number any responsive documents already produced and shall produce to plaintiff all responsive non-privileged documents in their care, custody, or control.

---

[41]*See DIRECTV, Inc. v. Puccinelli*, 224 F.R.D. 677, 682 (D. Kan. 2004)(finding defendants answer to a request for production by referring the moving party to "documents produced with Plaintiff's disclosures" improper).

[42] *Van Deelen v. Shawnee Mission School District*, No. 03-2018-CM, 2003 U.S. Dist. LEXIS 21528, at * 5  (D. Kan. Nov. 24, 2003)(citing *Contracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 666 (D. Kan. 1999)).

11

**D.    Duplicative Requests for Production (C.T.'s Request No. 25, G.B.'s Request Nos. 10-13 and 31 and J.B.'s Request No 21**).

C.T.'s Request No. 25, G.B.'s Request No. 31, and J.B.'s Request No. 21 seek "all documents and/or records received by defendant or its representatives pursuant to the medical authorization provided by this plaintiff to this defendant." Defendants object that this information is either protected from work product or at least equally available through plaintiff's own physicians. Plaintiffs state they have collected their own medial records, but have a strong interest in comparing what records defendants have collected.

G.B. Request Nos. 10-13 seek production of copies of the district's polices regarding "sexual misconduct of students or teachers" "sexual abuse of students" "protection from retaliation for students and/or teachers" and "policies enacted by [the district] subsequent to a complaint filed against you with the Department of Education's Office of Civil Rights in December of 2004 by the parents of G.B." Defendants respond that the "policies have been produced" and "[o]ther requests for such polies are duplicative."

**1.    Standard**

Relevant discovery is limited by Rule 26(b)(2) when:

(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

**2.    Analysis**

Here, defendants have failed to indicate how these discovery requests are *unreasonably* cumulative or duplicative or that the burden or expense of providing this information outweighs the

12

likely benefits.  As a result, defendants shall identify any previously produced responsive documents by Bates Number and shall produce any other non-privileged responsive documents in their care, custody or control.  However, to the extent that no responsive non-privileged documents exist, the court will require defendants to "serve supplemental written responses to this request unconditionally representing that no responsive [non-privileged] documents are in their possession, custody, or control."[43]

**E.      No further documents exist (G.B. Request Nos. 14).**

G.B.'s Request No. 14, seeks production of  "all files maintained by you on defendant Johnny Lynn Aubrey."  Defendants list several objections, and also state that "no such files exist" regarding Mr. Aubrey and any "file" created after the initiation of the claims by plaintiff are protected by work product immunity or attorney-client privilege as agreed to by the parties.

In light of the parties' agreement concerning privileged documents, and considering that "Fed. R. Civ. P. 34 does not require a party to create responsive documents if they do not exist in the first instance" and because "the Court cannot compel a party to produce documents that do not exist"[44] the court will not order further production.  However, to the extent that no responsive non-privileged documents exist, the court will require defendants to serve a supplemental written response to this request unconditionally representing that no responsive non-privileged documents are in their possession, custody, or control.

**F.      Consent decrees (G.B.'s Request Nos. 48 and 49 and J.B.'s Request Nos. 15 and 16).**

---

[43]*Manning v. G.M.*, No. 06-2504-JWL, 2007 U.S. Dist. LEXIS 89347, at * 11  (D. Kan. Dec. 4, 2007).

[44]*Azimi v. UPS, Inc*., No. 06-2114-KHV, 2007 U.S. Dist. LEXIS 49762, at * 27-28 (D. Kan. July 9, 2007)).

G.B.'s Request No. 48 seeks production of "any consent decrees you have entered into or have had approved on your behalf for the years 1997-2006" while G.B.'s Request No. 49 seeks production of "any release and/or settlement agreement you have entered into or have approved on behalf for the years 1997-2006."  Defendants object to the overbreadth and relevance of these requests but state in their response to the instant motion that "[t]here have been no consent decrees relevant to similar claims" and "no release or settlement agreements relevant to similar claims." Similarly, and J.B.'s Request No. 16 seeks production of copies of "all pleadings from lawsuits alleging claims under the Kansas Tort Claims Act" filed against the school district from 1995-2005. Defendants object as to overbreadth and assert that no claims similar to the ones filed by plaintiffs exist.  Essentially, defendants argue that these requests are so broad as to include other non-relevant claims such as slip-and-falls.

"[A]s a general rule, '[o]ther claims of discrimination against a defendant are discoverable only if limited to the same *form* of discrimination[.]'[45] Thus, the court finds that plaintiffs' requests, to the extent they seek information regarding claims that differ from the type plaintiffs assert, are facially over broad.  However, defendants have a duty to respond to discovery requests to the extent they are not objectionable.[46]  As a result, the court will order defendants to provide any responsive documents relating to the same type of claims asserted in the instant action, i.e,  claims of sexual harassment, sexual assault, etc.

---

[45]*Moss v. Blue Cross & Blue Shield of Kan., Inc*., 241 F.R.D. 683, 692 (D. Kan. 2007)(quoting *Mitchell v. National Railroad Passenger Corp*., 208 F.R.D. 455, 460 (D.D.C. 2002); citing *Cheesling v. Chater*, 162 F.R.D. 649, 651 (D. Kan. 1995)).

[46]*See e.g.*, *Van Deelen v. Shawnee Mission School District*, No. 03-2018-CM, 2003 U.S. Dist. LEXIS 21528, at *4-6 (D. Kan. Nov. 24, 2003)(recognizing that notices of slip and fall cases were not relevant to plaintiffs' § 1983 claims, but requiring defendant school district to respond to the request to the extent it was not objectionable, namely to produce notices of claims similar to that of plaintiff's.).

14

Similarly, J.B.'s Request No. 15 seeks "all complaints, grievances, or claims submitted to you for assault or battery for the years 1997-2006." Since the number of assault claims would reasonably seem significantly larger than those of sexual assault or sexual harassment and would likely include any schoolhouse fight, the court finds J.B.'s Request No. 15 facially over broad. However, defendants must respond to this discovery request to the extent sufficient guidance exists.[47]   Accordingly, defendants shall provide all responsive documents pertaining to any "complaints, grievances, or claims" of assault pertaining to any of the plaintiffs, any students whose files plaintiffs sought production, or any teacher, administrator, employee or volunteer within the years 1997-2006.

As to any of these requests, to the extent that there are no responsive non-privileged documents, defendants shall serve supplemental written responses to these requests unconditionally representing that no responsive non-privileged documents are in their possession, custody, or control.

**F.      Incidents of Sexual Harassment or Misconduct (G.B.'s Request Nos. 6 and 7 and 24-26).**

G.B.'s Request Nos. 6 and 7 seek for the years 1997-2006 production of "any and all documents, including correspondence, reports, tape recordings, video recordings, statements and e-mail, concerning" "incidents of sexual discrimination, sexual harassment, or sexual misconduct of students, staff or faculty members at Liberal HS" and "incidents of sexual discrimination, sexual harassment, or sexual misconduct towards students, staff or faculty members at Liberal HS." Similarly, for the years 1997-2006 G.B.'s Request Nos. 24-26 seek all pleadings from lawsuits filed

---

[47] *See e.g., Aikens v. Deluxe Fin. Servs.*, 217 F.R.D. 533, 537-38 (D. Kan. 2003).

against the school district  by students or former student by teachers or former teachers employees of former employees alleging sexual battery, sexual misconduct, sexual harassment, or sexual discrimination.

In their response to plaintiff's motion to compel defendants reference an overbreadth discussion relating to certain interrogatories where defendants claim that during this time period "[t]here have been no claims of sexual discrimination, harassment or misconduct similar to the claims in this case."

"[A] party resisting discovery on the basis that a request is overly broad has the burden to support its objection, unless the request is overly broad on its face."[48]  As these requests seek the same type claims plaintiffs have alleged, the court finds defendants have not supported their overbreadth objection and further finds these requests are not facially over broad.  Similarly, the court finds these discovery requests facially relevant.  These requests do not encompass clearly irrelevant incidents, such as slip-and-fall cases and are of such a serious nature that the school district likely has ready access to these documented instances.  As a result, defendants shall produce all responsive documents in their care, custody, or control and shall identify all previously produced responsive documents by Bates Number.

**G.      Complaints and Grievances (G.B.'s Request Nos. 21-23 and 34-36).**

G.B.'s Request Nos. 21-23 seek production of "all complaints, grievances, or claims submitted to you on account of sexual misconduct" "against students" "against your employees" or "by administrators, teachers coaches or volunteers" for years 1997-2006. G.B.'s Request Nos. 34-36 seek all documents including "correspondence, tape recordings, video recordings, statements and

---

[48]*Gen. Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

email" "concerning incidents of sexual contact or sexual misconduct between students, staff, faculty members, or volunteers" at Liberal High School, "any other USD # 480 school" "or at USD #480's Intermediate Schools or at its Middle Schools or at Southwest Kansas Technical School" for the years 1997 to 2006.

Defendants object that these requests are overly broad so as to encompass irrelevant information and not reasonable calculated to lead to the discovery of admissible evidence. Essentially, defendants argue that a schoolyard kiss or a consensual relationship between two teachers are irrelevant.

In turn, plaintiff argues, and the court agrees, that if the incident was serious enough to be *documented* as a complaint, grievance, or claim such documentation, and the school district's reaction to the incident, could lead to relevant admissible evidence in this case.  As such, the court finds plaintiff's requests facially relevant as they deal with documented complaints of sexual misconduct, like those of plaintiffs', and the school district's reaction thereto.

Defendants bear the burden of demonstrating a lack of relevancy, which they have not met. A simple schoolyard kiss or amicable consensual adult relationship would likely not be categorized as "sexual misconduct" and would likely not rise to the level of a complaint, grievance, or claim and as such plaintiff's request seems reasonably calculated to lead to the discovery of admissible evidence regarding other serious and similar complaints.

So too, the court also overrules defendants' overbreadth objection as unsubstantiated and finds the request is not facially over broad because any documented incidents of "complaints, grievances, or claims" likely are readily accessible.

Accordingly, defendants shall produce all non-privileged responsive documents in their care,

custody or control to plaintiffs and shall identify all previously produced responsive documents by Bates Number.

**H.      Correspondence between the parties (G.B.'s Request Nos. 38 and 39)**.

G.B.'s Request Nos. 38 and 39 seek "all correspondence" to and from "plaintiff, plaintiffs' parents or his representatives."  Defendants object that this request is overly broad as plaintiffs' parents are employees of the school district and Mr. Goodwin and the School District have exchanged numerous irrelevant correspondence.  However, defendants contend that all relevant correspondence has been produced.  In turn, plaintiff contends that defendants have not identified these relevant documents.

Here, the court finds that defendants have met their burden of demonstrating the over broad nature of these requests.  Considering G.B.'s parents are employees of the district locating any and all correspondence between them and the school district would prove overly broad and unduly burdensome and would require the district to "engage in mental gymnastics to determine what information may or may not be remotely responsive.'"[49]  However, defendants must still respond to these requests to the extent they are not objectionable and the court finds that any correspondence between the defendants and G.B. and G.B.'s parents and G.B.'s representatives which deal with *any* of the events giving rise to G.B.'s claims is relevant and shall be produced.  Defendants shall also identify by Bates Number all responsive non-privileged documents already produced.

**V.      Interrogatories**

As a general matter, the Federal Rules of Civil Procedure "require that each interrogatory shall be answered fully.  The rules allow for proper objections to an interrogatory, but do not allow

---

[49] *Aikens*, 217 F.R.D. at 538 (emphasis added).

an answer to be limited in the purpose for which it is provided."[50]

### A.    Rule 33(d)

In several instances, defendants merely reference their Rule 26 disclosures and other discovery produced, rather than answering the interrogatory.  "A party may answer an interrogatory by referring another party to documents attached to the responsive pleadings or to documents previously produced or disclosed."[51]  However, pursuant to Fed. Rule Civ. P. 33(d) the referenced documents "shall be in sufficient detail to permit the interrogating party to locate and identify, as readily as can the party served, the records from which the answer may be ascertained." However, a "[p]arty may not merely refer another party to documents hoping the other party will be able to glean the requested information from them."[52]  And, "[t]he court generally finds such practice unacceptable."[53]  "Absent compliance with Rule 33(d) or attachment of appropriate documents, [a party] may not direct [another party] to find answers from previously produced documents."[54]

Additionally, none of defendants' answers to these interrogatories utilize Rule 33(d). Specifically, defendants have failed to indicate that they were making an election to produce business records under Rule 33(d) in lieu of providing a written answer or failed to specifically designate the particular responsive business records to allow plaintiffs to easily locate and ascertain

---

[50]*Walls v. International Paper Co.*, 192 F.R.D. 294, 297 (D. Kan. 2000)(citing Fed. R. Civ. P. 33(b)).

[51]*Amimi v. UPS, Inc.*, No. 06-2114-KHV, 2007 U.S. Dist. LEXIS 49762 at, * 35 (D. Kan. July 9, 2007).

[52]*Id.* at 35-36 (citing *DIRECTV v. Puccinelli*, 224 F.R.D. 677, 680-81 (D. Kan. 2004).

[53]*Id.* at 36 (citing *Puccinelli*, at 680).

[54]*Id.*

the records from which an answer can be found.[55]

As a result, defendants shall fully answer G.B.'s Interrogatory No. 19 and J.B.'s Interrogatory Nos. 4-6 (limited to the same types of claims as agreed to by the parties) without objection.[56]  Defendants may do so via Rule 33(d) if done so properly and to the extent the court compels further answers to the rest of the disputed interrogatories, defendants may also utilize Rule 33(d) unless the court provides otherwise.

### B.      Plaintiff C.T.

### 1.      Interrogatory No. 3

Interrogatory No. 3[57] asks in part "Have you or your agents, investigators, attorneys, or anyone acting on your behalf, obtained statements of any kind, whether written, stenographic recorded, reported or otherwise, from any individual regarding this plaintiff, or any of the other plaintiffs in [the G.B. and J.B.] case in any context, including the allegations in this case or the companion cases?"   In their response to the instant motion defendants argue that the interrogatory is overly broad as it seeks statements of "any kind" and is vague and ambiguous.   However, defendants assert that they have provided all such "discoverable statements", pursuant to the parties' agreement regarding privileged documents.

_____

[55]*MGP Ingredients, Inc. v. Mars, Inc.*, No. 06-2318-JWL, 2007 U.S. Dist. LEXIS 82609, 18-19 (D. Kan. Nov. 6, 2007)(citing *Pulsecard, Inc. v. Discovery Card Servs., Inc.*, 168 F.R.D. 295, 305 (D. Kan. 1996)).

[56]Since defendants did not raise any objections to these interrogatories in their response to the motion to compel, any such objections initially raised have been waived.

[57]This interrogatory is the same as G.B. and J.B.'s Interrogatory Nos. 3.  When the court compels production of documents or answers to interrogatories which are identical to another plaintiff's requests for production or interrogatories, defendants shall respond to these other discovery requests in like fashion.

a.    **Vagueness and Overbreadth**

The party objecting to a discovery request bears the burden to show such vagueness or ambiguity.[58] Similarly, a party objecting to discovery on the basis of overbreadth "must support its objection, unless the request appears overly broad on its face."[59] Here, defendants have met this burden, as statements of any kind could mean any form of communication regarding these plaintiffs, and as a result, the court finds Interrogatory No. 3 vague and overly broad as it "requires the answering party to 'engage in mental gymnastics to determine what information may or may not be remotely responsive.'"[60]

However, Fed. Rule Civ. P. 33(b)(1) requires a party "to answer to the extent the interrogatory is not objectionable." In establishing guidance and to avoid crafting an arbitrary order, "the court must define the extent to which the interrogatory is reasonably answerable and not objectionable."[61] To this end, the court may use "other matters of record [to] define the discoverability of certain information encompassed by the interrogatory."[62] Here, the court interprets the interrogatory to mean all *written* statements, an interpretation both plaintiff and defendants appear to have adopted themselves.[63] As a result, defendants shall supplement their

---

[58] *W. Res., Inc. v. Union Pac. R.R. Co.,* 2002 U.S. Dist. LEXIS 1004, at *12 (D. Kan. Jan. 21, 2002) (citing *McCoo v. Denny's Inc.,* 192 F.R.D. 675, 694 (D. Kan. 2000)).

[59] *Cory v. Aztec Steel,* 225 F.R.D. 667, 672 (D. Kan. 2005).

[60] *Aikens,* 217 F.R.D. at 538 (emphasis added).

[61] *Id.* at 538-39 (quoting *Mackey v. IBP, Inc.,* 167 F.R.D. 186, 198 (D. Kan. 1996)).

[62] *Id.* at 539.

[63] *See e.g.*, Reply (Doc. 212) at p. 5-6 ("Plaintiffs have the right to *see* such statements or at the very least, receive a privilege log the Court can review to determine whether withheld *documents* truly fall within in [sic] an applicable privilege.")(emphasis added).

response to Interrogatory No. 3 accordingly.

Should defendant wish to answer this interrogatory through Rule 33(d) they shall follow the procedure herein described and shall list responsive documents by Bates Number.

2.      **Interrogatory No. 8**

Interrogatory No. 8 asks defendants, in part, to "identify each student who was interviewed with regard to any allegations of misconduct or impropriety by defendant Johnny Aubrey[.]" Defendants object that "[t]his interrogatory is vague and ambiguous and calls for the disclosure of attorney-client and/or work product privileged information. Without waiving said objections, this defendants state that it was not aware of any allegations of misconduct or impropriety by Johnny Aubrey until after the matter was being fully investigated and prosecuted by law enforcement and with special prosecutor."

In light of the parties' agreement on the issue of privilege, the court finds plaintiff's motion to compel an answer to Interrogatory No. 8 moot.

3.      **Interrogatory No. 7**

Interrogatory No. 7[64] asks "were any [of] your employees or school administrators, teachers or coaches every disciplined in connection with any of the allegations contained in this lawsuit? If so, please state the date and type of discipline issued and the reason for such discipline." Defendants' object, stating "This interrogatory is vague, ambiguous, over-broad and vexatious. Without waiving said objection . . . no employees, administrators, teachers, or coaches were disciplined in connection with d[e]fendant Aubrey's alleged conduct inasmuch as they were not aware of or participants in improper conduct."

---

[64]Interrogatory No. 7 is identical to J.B.'s Interrogatory No. 7 and G.B.'s Interrogatory No. 11.

Here, to the extent defendants' response raised objections as to vagueness and over breadth, the court overrules such objections. Interrogatory No. 7 is not vague or overly broad as it is readily understandable and easy to ascertain if any employees of the School District were ever "disciplined" regarding any allegations contained in this lawsuit. As a result, the court orders defendants to supplement their response to Interrogatory No. 7 to the extent necessary. However, the court notes that it cannot compel what does not exist, i.e., if no employees or school officials, teachers or coaches were ever "disciplined" defendants' answer is sufficient and the court can see no basis to compel a further answer.

### 4.    Interrogatory No. 11

Interrogatory No. 11[65] asks defendants to "Identify each person who had possession of a key to the Liberal High School facility, including all volunteers or persons who are not employees of USD # 480." Defendants object, stating Interrogatory No. 11 is "vague and ambiguous as to time. In addition it is vague as to which keys and which facilities. Therefore over-broad and vexatious, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving said objection, defendants state generally that administrators, teachers, coaches and custodian[s] are given keys as needed. Johnny Aubrey was not issued a key by this defendant."

In response to the motion to compel, defendants contend "if the Interrogatory is construed to request information concerning keys to the Liberal High School building, the answer is complete. Moreover, defendant has produced key checkout sheets that it was able to obtain."[66]

Plaintiff contends that counsel for defendants agreed to "supplement that no defendant

---

[65]Interrogatory No. 11 is identical to G.B.'s Interrogatory No. 11.

[66]Response (Doc. 206) at p. 4.

provided a key to Aubrey" but this supplementation has not occurred.  Plaintiff's briefing on the issue indicates that this is all plaintiff seeks from this interrogatory.   Despite plaintiff's statement defendants' response to the actual interrogatory states that Mr. Aubrey was not given a key.  Plaintiff further argues that "merely because a record cannot be found does not preclude the school district from inquiring of key employees or staff members regarding the *practice* of providing keys to the high-school facilities to volunteers etc."[67]  However, describing the practice of providing keys to the high school was not sought in this interrogatory, nor would such a description prove responsive to what was actually sought.  As a result, the court sees no reason to compel further supplementation to this interrogatory.

### C.      G.B.'s Interrogatories

### 1.      Interrogatory No. 4

Interrogatory No. 4 asks "Have you been sued for personal injuries, discrimination, harassment, sexual misconduct or for violation of an individual's rights under Kansas or federal laws in the last ten (10) years" and seeks further information regarding such suits.

In response to the motion defendants only raise overbreadth as an objection, specifically that plaintiff's claims are "so broad as to include any kind of tort claim including car accidents, slip and falls, etc.  Plaintiffs' counsel indicated that all they were seeking was information concerning lawsuits involving claims similar to the claims in these three lawsuits. . . .  As defendants' counsel advised plaintiff's counsel . . . there are no lawsuits with claims similar to the ones being asserted in this cases."[68]

---

[67]Reply (Doc. 212) at p. 7 (emphasis added).

[68]Response (Doc. 206) at p. 4.

As with defendants' similar requests for production, the court agrees that the interrogatory is facially over broad, but finds adequate guidance exists. Defendants shall answer this interrogatory to the extent it seeks information regarding suits which include claim similar to those raised by plaintiffs. To the extent none exist, defendants shall formally supplement their answer to this interrogatory to indicate such.

### 2.      Interrogatory Nos. 5-10

Interrogatory Nos. 5-7 asks defendants to "list every incident or claim reported to you" occurring in the last ten (10) years "for any type of sexual discrimination or sexual harassment or sexual misconduct of a student in the last ten (10) years" (No. 5) "any type of sexual misconduct" (No. 6) or "any type of sexual misconduct between students and/or students or faculty or coaches or volunteers[.]" (No. 7). Interrogatory Nos. 8, 9 and 10 ask defendant to detail any investigations undertaken regarding any of these incidents or claims.

In response to the instant motion defendants object that these requests are over broad and include matters of no relevance to this lawsuit, specifically that it is not relevant to this case whether a couple of sixteen year olds were caught kissing or whether two faculty members engaged in a consensual affair.

Here, as with similar requests for production, the court overrules defendants' objections as to relevance and overbreadth. Any incident that would be categorized so severely as "sexual misconduct" would likely be readily ascertainable and could lead to the discovery of admissible evidence. To the extent defendants believe otherwise, they have failed to make such a demonstration to the court. As a result, defendants shall answer this interrogatory fully and may do so using Rule 33(d) if appropriate.

25

### 3.       Interrogatory Nos. 13 and 14

Interrogatory No. 13[69] asks defendants to "describe with particularity and in detail your investigation into the claims of this plaintiff that he and other students were encouraged by coaches employed with the Liberal School District to participate in weight lifting programs run by defendant Johnny Aubrey[.]" Similarly, Interrogatory No. 14 asks defendants to "set forth with particularity and in detail the information you received from each witness interviewed during the course of your investigations into the claims of G.B. that Johnny Aubrey had engaged in improper sexual conduct and talk with G.B. while G.B. was a student at Liberty High School."

Defendants contend that they have no responsive information that is not privileged.  As a result, in light of the parties' agreement as to work product immunity and privilege, the court will not compel a further response but will require defendants to supplement their written answer to reflect their response to the instant motion to compel.

### 4.       Interrogatory Nos. 16 and 17

Interrogatory No. 16 asks defendants to "Describe your policies, whether formal or informal, that would have allowed a school administrator, teacher or coach to provide key(s) to the Liberal High School facility to a volunteer or to a person who is not an employee of USD #480." Defendants object that this interrogatory is vague and ambiguous, but without waiving this objection refers plaintiff to documents produced pursuant to Rule 26 and in response to other discovery requests.

Interrogatory No. 17 asks, in part, for defendants to "Identify and describe in detail all of your policies, procedures and protocols relating to the investigation of sexual misconduct claims or complaints, whether student on student, teacher on student, teacher on teacher, or volunteer on

---

[69]Interrogatory No. 13 is identical to J.B.'s Interrogatory No. 8.

student[.]"  The only objection defendants raise in response to the instant motion is vagueness. Defendants contend that it has provided plaintiff all written policies in effect when the alleged events that gave rise to this action took place, as well as written policies implemented preceding and subsequent to that time.

Here, the court overrules defendants' vagueness objection, finding nothing vague about these interrogatories, and finds defendants' answers insufficient.  Defendants again merely point to Rule 26(a) documents and other documents produced in discovery and, as previously discussed, this is an insufficient answer.  Furthermore, Interrogatory No 16 also seeks "informal" policies and as such reference to documents pursuant to Rule 33(d) would likely provide an inadequate response.  As a result, the court will require defendants to answer Interrogatory Nos. 16 and 17 in full and will not permit the use of Rule 33(d).

### 5.    Interrogatory No. 18

Interrogatory No. 18 seeks identification of "all training events, seminars, or symposiums designed to educate your employees, including administrators, teachers and coaches, as to their rights, duties and obligations under Title IX of the Education Amendments of 1972, 20 U.S.C. 1681(a)."

Defendants contend supplementation of this Interrogatory has occurred and that they have provided documents concerning attendance at in services, seminars and other such meeting, but that this topic comes up at numerous faculty and administrative meetings in both formal and informal ways.   In their reply plaintiffs argue, and the court agrees, that defendants should answer the interrogatory fully instead of objecting.

"[A]ll training *events*, seminars, or symposiums *designed* to educate . . . as to . . . rights,

duties and obligations under Title IX" contemplates a formal and official (and presumably well documented) program created (or designed) to inform the employees of the School District regarding their rights and responsibilities under Title IX.  As a result, the court overrules defendants' implicit objections as to vagueness and overbreadth.  Accordingly, defendants shall answer Interrogatory No. 18 in full.  To the extent that defendants wish to use Rule 33(d) they may do so as outlined in this order.

### 6.    Interrogatory No. 20

Interrogatory No. 20 asks, in part, whether "During the past ten (10) years, have you or any other entity or person acting on your behalf provided *any items* to Johnny Lynn Aubrey, including keys to any building owned or operated by USD #480?"[70]

Defendants' answer that: "This interrogatory is . . . over-broad.  Without waiving said objection, and interpreting it as defendants believe it was intended, the answer is no." Defendants explain in their response to the instant motion that this interrogatory is so broad "as to include offering a piece of gun to Mr. Aubrey while sitting at a football game.  However, assuming plaintiffs' did not intend it to be so broad but were looking for information actually relevant to this lawsuit, the answer is no.  It still is."[71]

Here, the court sustains defendants' overbreadth objection, as this interrogatory is facially over broad.  Indeed, because adequate guidance does not exist to allow the court to determine to what extent the interrogatory is not objectionable[72] the court will not require a further answer.

---

[70](Emphasis added).

[71]Response (Doc. 206) at p. 7.

[72] *Horizon Holdings, LLC v. Genmar Holdings, Inc*., 209 F.R.D. 208, 215 (D. Kan. 2002) (citing *Mackey*, 167 F.R.D. at 197).

### 7.      Interrogatory No. 22

Interrogatory No. 22 asks defendants to

describe with particularity and in detail the policies and procedures utilized by USD #480 when checking into the background, history, and criminal background, history, and criminal background of a teacher, coach, employee, or volunteer, including checking the Federal Bureau of Investigation data bank, the National Crime Information Center data bank, the Kansas Bureau of Investigation data bank, and state or local criminal history data banks.

Defendants object that this interrogatory is "unlimited as to time and is unreasonable in its scope requesting every detail of any background check ever conducted, whether it was of a teacher, coach, an employee or a volunteer."  Additionally, defendants argue that "the term volunteer is not defined even though the definition of that term, particularly as it relates to background checks, is a serious issue in this case."[73]  Defendants also generally point plaintiff to Rule 26(a) disclosures and other discovery production.

Here the court overrules defendants' overbreadth and unduly burdensome objections. Plaintiffs are not seeking the *results* of every background check previously conducted, rather plaintiffs seek the policies and procedures governing background checks for employees and volunteers.  As to temporal scope, all of plaintiffs' requests for production begin with the period July 1, 1995 unless otherwise stated.  Defendants have not objected to this temporal scope in plaintiffs' other discovery requests, and the thus the court overrules this objection.

As to the alleged vagueness as to the term volunteer, under the Federal Rules, the party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity.[74] In doing so, the party must show that more tools beyond mere reason and common sense are

---

[73]Response (Doc.206) at p. 8.

[74] *W. Res., Inc. v. Union Pac. R.R. Co.*, 2002 U.S. Dist. LEXIS 1004, at *12 (D. Kan. Jan. 21, 2002) (citing *McCoo v. Denny's Inc.,* 192 F.R.D. 675, 694 (D. Kan. 2000)).

necessary "to attribute ordinary definitions to terms and phrases utilized[.]"[75]  To the extent parents, teachers, or members of the community who were not employees of the School District volunteered on a regular basis at the school, the school district should list any policies and procedures in place regarding checking into their background.

### D.    J.B.'s Interrogatories

**Interrogatory No. 10**

Interrogatory No. 10 asks, in part, defendants to "Identify and describe in detail your policies, procedures and protocols relating to discipline of students and/or employees, and identify when such policies, procedures or protocols were implemented, and the person(s) in charge of implementing such policies, procedures or protocols, and the person(s) in charge of enforcing such policies."

In their response to motion to compel defendants contend this interrogatory is vague, ambiguous, over-broad and vexatious since it is unlimited as to time and not limited to the attendance centers that plaintiffs attended.

Here, the court overrules the temporal scope objection, as the interrogatory is narrowed in time from July 1, 1995 to the present.  However, the court agrees that the interrogatory should be limited to those policies, procedures and/or protocols applicable to the attendance centers and locations of the School District's extracurricular activities attended by plaintiffs during this time period.  Defendants shall fully answer Interrogatory No. 10 with this guidance in mind.

### VI.    Sanctions

Under Fed. R. Civ. P. 37(a)(4)(C) when a court grants in part and denies in part a motion to

---

[75]*Id.*

compel, the court can "apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner." Whether to impose sanctions lies within the court's discretion.[76] The court "must consider on a case-by-case basis whether the party's failure was substantially justified or whether other circumstances make the imposition of sanctions inappropriate."[77] In deciding whether to grant sanctions based on Rule 37(a)(4)(C), the court in *Mackey v. IBP, Inc*., found that "[j]ustice requires that each party be responsible for its own costs and expenses incurred upon the motion [to compel]" because "[b]oth parties took legitimate positions on the motion [to compel]."[78]

Here, the court believes it appropriate and just for plaintiffs and defendants to bear their own expenses and fees incurred in connection with the present motion because both parties took legitimate positions on the motion to compel.

Accordingly,

IT IS THEREFORE ORDERED that plaintiffs' Motion to Compel (Doc. 190) is granted in part and denied in part as detailed herein.

IT IS FURTHER ORDERED that defendants shall produce responsive documents and or supplement their responses to the Requests for Production herein identified by February 18, 2008.

IT IS FURTHER ORDERED that defendants shall supplement their answers to or fully

---

[76] *Barnes v. Akal Sec. Inc.*, No. 04-1350, 2005 U.S. Dist. LEXIS 33262, at *21 (D. Kan. December 9, 2005)(citing *Nat'l Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642 (1976)).

[77] *Id.* (citing *Starlight Int'l, Inc. v. Herlihy*, 186 F.R.D. 626, 646 (D. Kan. 1999)).

[78]*Mackey v. IBP Inc.*, 167 F.R.D. 186, 207 (D. Kan. 1996). *See also Lawrence-Leiter & Co. v. Paulson*, No. 96-2535, 1997 U.S. Dist. LEXIS, at *7 (D. Kan. June 23, 1997)(concluding that because "the parties took legitimate positions on the motion [to compel] . . . sanctions are not justified.").

answer the interrogatories herein identified by February 18, 2008.

IT IS FURTHER ORDERED that plaintiffs shall have until February 29, 2008 to depose Mr. Vernon Welch related to any documents for which the court has ordered production.

IT IS SO ORDERED.

Dated this 11th  day of February, 2008, at Topeka, Kansas.

 s/ K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge

32